CV 13 - 0755

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------- X

KEVIN LIBURD,

Plaintiff,    **COMPLAINT**

-against-

THE CITY OF NEW YORK; P.O. SHAY JACKSON;
and P.O. JOHN DOE # 1, the individual
defendant(s) sued individually and in
their official capacities,

ECF Case

Jury Trial Demanded

Defendants.

------------------------------------------- X

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which plaintiff

seeks relief for the violation of plaintiff's rights secured by

42 U.S.C. § 1983; and the Fourth, Sixth, and Fourteenth

Amendments to the United States Constitution, and the laws of

the State of New York.  Plaintiff's claims arise from an

incident that arose on or about November 13, 2011.  During the

incident, the City of New York, and members of the New York City

Police Department ("NYPD") subjected plaintiff to, among other

things: unlawful search and seizure; false arrest; assault and

battery; unreasonable force; failure to intervene; unlawful

strip search; malicious prosecution; denial of a fair trial;

implementation and continuation of an unlawful municipal policy,

practice, and custom; and respondeat superior liability.

Plaintiff seeks compensatory and punitive damages, declaratory relief, an award of costs and attorney's fees, pursuant 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper.

**JURISDICTION & VENUE**

2.    This action is brought pursuant to 42 U.S.C. § 1983, and the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution.  Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343.

3.    Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims arising under state law.  Plaintiff's notice of claim was duly filed on defendant City of New York within 90 days of the incidents at issue, more than 30 days have elapsed since such filing and the City of New York has refused to settle plaintiff's claims.  Moreover, this action has been filed within one year and 90 days of the incidents.  Plaintiff has satisfied all conditions precedent for the filing of this action.

4.    Venue is proper here pursuant to 28 U.S.C. § 1391 because some of the acts in question occurred in Kings County, and the City of New York is subject to personal jurisdiction in the Eastern District of New York.

2

## PARTIES

5.     Plaintiff Kevin Liburd is an African American, and resident of the State of New York, Kings County.

6.     At all times alleged herein, defendant City of New York was a municipal corporation organized under the laws of the State of New York, which violated plaintiff's rights as described herein.

7.     At all times alleged herein, defendants P.O. Shay Jackson, and P.O. John Doe # 1 were New York City Police Officers employed with 67th Precinct, located in Kings County, New York, or other as yet unknown NYPD assignment, who violated plaintiff's rights as described herein.

8.     The individual defendants are sued in their individual and official capacities.

## STATEMENT OF FACTS

### Incident

9.     On November 13, 2011, at and in the vicinity of 270 Clarkson Avenue, Brooklyn, New York, and the 67th Precinct, Brooklyn, New York, police officers operating from the 67th Precinct, including upon information and belief, defendants P.O. Shay Jackson, and P.O. John Doe # 1, at times acting in concert, and at times acting independently, committed the following illegal acts against plaintiff.

3

10.   On November 13, 2011, at approximately 7:30 p.m. in the vicinity of 270 Clarkson Avenue, Brooklyn, New York, P.O. Shay Jackson, and P.O. John Doe # 1, without either consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff (or any third person) had committed a crime unlawfully arrested plaintiff.

11.   Plaintiff was at home in his building's parking garage with his brother-in-law talking and looking over his car when the police approached them.

12.   The police were wearing plain clothes.

13.   The police had their guns drawn held at their sides.

14.   The police asked plaintiff and his brother-in-law what they were doing and demanded that they produce their identification.

15.   Plaintiff and his brother-in-law showed them their identification.

16.   Plaintiff's identification showed that he was a resident of the building.

17.   P.O. Shay Jackson, and P.O. John Doe # 1 searched plaintiff and his brother-in-law.

18.   The searches were without cause or justification.

4

19.   The police found no weapons, contraband, controlled substances, or evidence of any crime during the search.

20.   Instead of freeing plaintiff and his brother-in-law, the police began looking for some evidence to falsely charge the men with.

21.   After some time, the police falsely claimed that they found a marijuana bud on the garage floor.

22.   The police then grabbed plaintiff and his brother-in-law, yanked their arms behind their backs and handcuffed them.

23.   The handcuffs were excessively tight.

24.   Plaintiff complained about being falsely arrested and the tight handcuffs.

25.   The police ignored him.

26.   The police placed plaintiff and his brother-in-law in an awaiting police van and drove him around for several hours as they picked up other people.

27.   Eventually, the police brought them to the 67th Precinct.

28.   At the 67th Precinct, the police subjected plaintiff to a strip search in a cell area by making him take off his clothes, expose his genitals and squat.

29.   After several hours, the police issued plaintiff a desk appearance ticket falsely claiming that he possessed marijuana.

30.   The police then released plaintiff.

31.   The plaintiff suffered pain and marks to his wrists.

32.   In order to cover up their illegal actions, the police, pursuant to a conspiracy, initiated, and falsely and maliciously told the Kings County District Attorney's Office that plaintiff had committed various crimes.

33.   The police made these false allegations, despite the fact that they had no evidence that plaintiff had committed a crime, to cover up their misconduct, to retaliate against plaintiff, to meet productivity goals and quotas, and to justify overtime expenditures.

34.   Upon information and belief, the unlawful actions against plaintiff were also based on profiling.

35.   However, as there was no basis to arrest plaintiff, much less prosecute him, the charges against plaintiff were dismissed on or about December 14, 2011, and the case against him terminated in his favor.

36. Upon information and belief, the criminal case against plaintiff's brother-in-law was also dismissed, terminating in his favor.

**General Allegations**

37. The individual defendants acted in concert committing the above-described illegal acts toward plaintiff.

38. Plaintiff did not violate any law, regulation, or administrative code; commit any criminal act; or act in a suspicious or unlawful manner prior to or during the above incidents.

58. At no time prior to, during or after the above incidents were the individual defendants provided with information, or in receipt of a credible or an objectively reasonable complaint from a third person, that plaintiff had violated any law, regulation, or administrative code; committed any criminal act; or acted in a suspicious or unlawful manner prior to or during the above incidents.

59. The defendants acted under pretense and color of state law and within the scope of their employment. Said acts by said defendants were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of their rights.

7

60.   As a direct and proximate result of defendants' actions, plaintiff experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

61.   Plaintiff is entitled to receive punitive damages from the individual defendants because the individual defendants' actions were motivated by extreme recklessness and indifference to plaintiff's rights.

### FIRST CLAIM

#### (UNLAWFUL SEARCH AND SEIZURE UNDER FEDERAL LAW)

62.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

63.   Defendants unlawfully stopped and searched plaintiff without cause, a warrant, or consent.

63.   Accordingly, defendants are liable to plaintiff for unlawful search and seizure under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

### SECOND CLAIM

#### (UNLAWFUL SEARCH AND SEIZURE UNDER STATE LAW)

64.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

65.    Defendants unlawfully stopped and searched plaintiff without cause, a warrant, or consent.

66.    Accordingly, defendants are liable to plaintiff for unlawful search and seizure under New York State law.

### THIRD CLAIM

### (FALSE ARREST UNDER FEDERAL LAW)

67.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein

68.    Defendants falsely arrested plaintiff without consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime.

69.    Accordingly, defendants are liable to plaintiff for false arrest under 42 U.S.C. § 1983; and the Fourth Amendment to the United States Constitution.

### FOURTH CLAIM

### (FALSE ARREST UNDER STATE LAW)

70.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

71.    Defendants falsely arrested plaintiff without consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime.

9

72.   Accordingly, defendants are liable to plaintiff for false arrest under New York State law.

## FIFTH CLAIM

### (UNREASONABLE FORCE)

73.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

74.   The individual defendants' use of force upon plaintiffs was objectively unreasonable.

75.   The individual defendant officers did not have an objective and/or reasonable basis to use any degree of force against plaintiff, since plaintiff was unarmed, compliant, and did not resist arrest.

76.   Those defendants who did not touch plaintiff, witnessed these acts, but failed to intervene and protect plaintiff from this conduct.

77.   Accordingly, the defendants are liable to plaintiff for using unreasonable and excessive force, pursuant to 42 U.S.C. § 1983; and the Fourth Amendment to the United States Constitution.

## SIXTH CLAIM

### (ASSAULT)

78.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

79.   Among other things as described above, defendants' search and seizure, battery, false arrest, and excessive use of force against plaintiff placed him in fear of imminent harmful and offensive physical contacts.

80.   Accordingly, defendants are liable to plaintiff under New York State law for assault.

## SEVENTH CLAIM

### (BATTERY)

81.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

82.   Among other things as described above, defendants' search and seizure, false arrest, and excessive use of force against plaintiff were illegal physical contacts.

83.   Accordingly, defendants are liable to plaintiff under New York State law for battery.

## EIGHTH CLAIM

### (FAILURE TO INTERVENE)

84.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

85.   Defendants had a reasonable opportunity to prevent the violations of plaintiff's constitutional rights, but they failed to intervene.

86.   Accordingly, the defendants are liable to plaintiff for failing to intervene to prevent the violation of plaintiff's constitutional rights.

### NINTH CLAIM

#### (UNLAWFUL STRIP-SEARCH)

87.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

88.   Plaintiff was strip-searched by the defendants without regard to probable cause, reasonable suspicion or the charges alleged against the detainee.   The strip-search of plaintiff was also unlawful because it was carried out in a non-private manner.

89.   Accordingly, the defendants are liable to the plaintiff for their unlawful strip-search in an amount to be determined by a jury.

### TENTH CLAIM

#### (MALICIOUS PROSECUTION CLAIM UNDER FEDERAL LAW)

90.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

91.   The individual defendants are liable to plaintiff for malicious prosecution because, pursuant to a conspiracy and acting with malice, the defendants initiated a malicious prosecution(s) against plaintiff by knowingly, intentionally,

12

and maliciously providing false statements (including signed complaints and police reports) to prosecutors and/or the court(s), which alleged plaintiff had committed various crimes.

92.    The individual defendants lacked probable cause to believe the above-stated malicious prosecution(s) could succeed.

93.    The individual defendants acted to cover up their illegal and unconstitutional conduct by initiating the above-stated malicious prosecution(s).

94.    The above-stated malicious prosecution(s) caused a sufficient post-arraignment liberty restraint on plaintiff.

### ELEVENTH CLAIM

### (MALICIOUS PROSECUTION CLAIM UNDER STATE LAW)

95.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

96.    The individual defendants are liable to plaintiff for malicious prosecution because, pursuant to a conspiracy and acting with malice, the defendants initiated a malicious prosecution(s) against plaintiff by knowingly, intentionally, and maliciously providing false statements (including signed complaints and police reports) to prosecutors and/or the court(s), which alleged plaintiff had committed various crimes.

13

97.   The individual defendants lacked probable cause to believe the above-stated malicious prosecution(s) could succeed.

98.   The individual defendants acted to cover up their illegal and unconstitutional conduct by initiating the above-stated malicious prosecution(s).

## TWELFTH CLAIM

### (DENIAL OF FAIR TRIAL)

99.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

100.   The defendants are liable to plaintiff because they intentionally conspired to fabricate evidence against plaintiff, depriving plaintiff of liberty without due process of law.

101.   Furthermore, the defendants violated the law by making false statements by drafting and/or signing a sworn criminal court complaint and false police reports.

102.   Furthermore, the individual defendants violated the law by manipulating evidence to obtain a prosecution and unjust conviction, while performing the function of investigators.

103.   The individual defendants were on notice that creating fabricated evidence is a clear violation of law because

it well established that individuals who knowingly use false evidence at trial to obtain a conviction act unconstitutionally and is redressable in an action for damages under 42 U.S.C. § 1983.

104. The individual defendants are also liable to plaintiff because they intentionally created false information likely to influence a fact finder's or jury's decision by, *inter alia*, forwarding false information to prosecutors, drafting and signing a sworn criminal court complaint and police reports, omitting and/or manipulating evidence, fabricating testimony and evidence, suppressing and concealing exculpatory material and evidence, and forwarding and presenting false information to a court thereby violating plaintiff's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.

**THIRTEENTH CLAIM**

**(MONELL CLAIM)**

105. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

106. Defendant City of New York, through a policy, practice and custom, directly caused the constitutional violations suffered by plaintiff.

15

107.   Defendant City of New York through the NYPD and its officers, committed the following unconstitutional practices, customs and policies against plaintiff: (1) unlawfully stopping and searching innocent persons; (2) wrongfully arresting innocent persons in order to meet productivity goals; (3) wrongfully arresting individuals based on pretexts and profiling; (4) using unreasonable force on individuals; (5) fabricating evidence against innocent persons; and (6) retaliating against people who complain about police misconduct.

108.   Upon information and belief, defendant City of New York, at all relevant times, was aware that the defendants were unfit officers who have previously committed the acts alleged herein, have a propensity for unconstitutional conduct, or have been inadequately trained.

109.   Nevertheless, defendant City of New York exercised deliberate indifference by failing to take remedial action.   The City failed to properly train, retrain, supervise, discipline, and monitor the individual defendants and improperly retained and utilized them.   Moreover, upon information and belief, defendant City of New York failed to adequately investigate prior complaints filed against the individual defendants.

16

110.   Further, defendants City of New York was aware
prior to the incident that the individual defendants (in
continuation of its illegal custom, practice and/or policy)
would stop, arrest and prosecute innocent individuals, based on
pretexts and false evidence.

111.   The existence of the aforesaid unconstitutional
customs and policies may be inferred from repeated occurrences
of similar wrongful conduct involving the individual defendants,
placing the defendant City of New York on notice of the
individual defendants' propensity to violate the rights of
individuals.

112.   In addition to frequently violating the civil
rights of countless residents of New York City, numerous members
of the NYPD commit crimes. Officers have been arrested and
convicted of such crimes as planting evidence on suspects,
falsifying police reports, perjury, corruption, theft, selling
narcotics, smuggling firearms, robbery, fixing tickets, driving
under the influence of alcohol, vehicular homicide, assault and
domestic violence. In fact, former NYPD Commissioner Bernard
Kerik was convicted of corruption-related crimes in federal and
state court and served time in federal prison. In 2011, Brooklyn
South Narcotics officer Jerry Bowens was convicted of murder and
attempted murder in Supreme Court, Kings County, while under

indictment for corruption and is presently serving a life sentence. In 2011, Police Officer William Eiseman and his subordinate Police Officer Michael Carsey were convicted of felonies in Supreme Court, New York County, for lying under oath, filing false information to obtain search warrants and performing illegal searches of vehicles and apartments. In 2012, New York City Police Officer Michael Pena was convicted in Supreme Court, New York County, of raping and sexually assaulting a woman at gunpoint and is presently serving a sentence of 75 years to life.

113. Additionally, the existence of the aforesaid unconstitutional customs and polices of profiling minorities, may be inferred from an analysis of the NYPD conducted by the New York Civil Liberties Union ("NYCLU"). The NYCLU's analysis revealed that more than 2 million innocent New Yorkers were subjected to police stops and street interrogations from 2004 through 2011, and that black and Latino communities continue to be the overwhelming target of these tactics. Nearly nine out of 10 stopped-and-frisked New Yorkers have been completely innocent, according to the NYPD's own reports.

114. In August 2009, Proffer Levine released a report entitled *The Epidemic of Pot Arrests in New York City*, which stated: Perhaps most appalling is who the police are arresting

for marijuana possession.  United States government studies have consistently found that young whites use marijuana at higher rates than do young blacks or Latinos. But the NYPD has long arrested young blacks and Latinos for pot possession at much higher rates than whites. In 2008, blacks were about 26% of New York City's population, but over 54% of the people arrested for pot possession. Latinos were about 27% of New Yorkers, but 33% of the pot arrestees. Whites were over 35% of the City's population, but less than 10% of the people arrested for possessing marijuana. In 2008, police arrested Latinos for pot possession at four times the rate of whites, and blacks at seven times the rate of whites.

115.  Furthermore, documented civilian complaints about officer misconduct show that African Americans are the most likely targets of abuse, but their complaints are largely ignored.  According to the City of New York's Civil Complaint Review Board's ("CCRB") Status Report, dated December and January 2010, in 2010 African Americans were overrepresented as alleged victims of police misconduct.  Although making up only 23% of New York City's population, they are 58.5% of the alleged victims in CCRB complaints.  On the other hand, whites and Asians were a disproportionately low percentage of alleged victims.

116.   The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the NYPD were the direct and proximate cause of the constitutional violations suffered by plaintiff as alleged herein.

117.   The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the NYPD were the moving force behind the constitutional violations suffered by plaintiff as alleged herein.

118.   The City's failure to act resulted in the violation of plaintiff's constitutional rights as described herein.

### FOURTEENTH CLAIM

### (RESPONDEAT SUPERIOR)

119.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

120.   The individual defendants were acting within the scope of their employment as New York City Police Officers when they committed the above described acts against plaintiff, including falsely arresting, assaulting, and battering plaintiff.

121.   The City of New York is therefore vicariously liable under New York State law for the aforesaid torts.

**WHEREFORE**, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a.   Compensatory damages in an amount to be determined by a jury;

b.   Punitive damages in an amount to be determined by a jury;

c.   Costs, interest and attorney's fees, pursuant to 42 U.S.C. § 1988; and

d.   Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:   Brooklyn, New York
         February 8, 2013

                          MICHAEL O. HUESTON, ESQ.
                          *Attorney for Plaintiff*
                          16 Court Street, Suite 3301
                          Brooklyn, New York 11241
                          (718) 246-2900
                          mhueston@nyc.rr.com
                          By:

                          MICHAEL O. HUESTON

21